## COHN-GOODMAN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7167.    Promulgated June 23, 1927.

1. Prior to June 3, 1924, the Commissioner assessed additional taxes for the fiscal years ended November 30, 1917, and November 30, 1918. Abatement claims were filed and by letter of July 21, 1925, the Commissioner advised that overassessments had been found for those years. The overassessments were less than the amounts of the additional assessments. An appeal was pending at the time the Revenue Act of 1926 was enacted. *Held,* That under section 283(f) the Board has jurisdiction.

2. Under the facts herein *held* that the earnings of the petitioner credited to the accounts of its stockholders constituted loans to the petitioner and may not be included in invested capital.

3. On May 31, 1920, the capital stock of the petitioner was increased, the stockholders paying in for the increase the amounts credited to them on petitioner's books and giving notes for the balance. *Held,* that from that date petitioner is entitled to include in its invested capital the amount of the increase in its capital stock.

*R. M. O'Hara, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

The Commissioner has determined deficiencies for the fiscal years ended November 30, 1919, and November 30, 1920, in the amounts

respectively, of $3,688.95 and $1,454.17, and overassessments for the fiscal years ended November 30, 1917, and November 30, 1918, in the amounts of $1,551.38 and $2,567.92.

The dispute between the parties arises from the action of the Commissioner in eliminating from invested capital the amount of a special surplus account. An error alleged by the petitioner as to the comparatives selected by the respondent was withdrawn at the hearing. The Commissioner has moved to dismiss as to the fiscal years ended November 30, 1917, and November 30, 1918, for the reason that he has not asserted a deficiency for those years.

### FINDINGS OF FACT.

The petitioner is an Ohio corporation with its office and place of business at Cleveland, and is engaged in the business of manufacturing and selling women's coats. Petitioner was incorporated in 1902 with an authorized capital stock of $50,000 and is a successor to a copartnership. It was the practice of Albert A. Cohn and Louis Goodman, stockholders and active managers of the business, to permit a certain portion of the profits accruing to them as stockholders to remain in the business, their personal accounts being credited with the amounts not withdrawn.

On or about March 1, 1911, the balance in the personal account of Albert A. Cohn was $50,000 and in the account of Louis Goodman $47,000. On that date it was agreed between Messrs. Cohn and Goodman and the corporation that the former would advance to the. latter the respective sums appearing to their credit on the corporation's books, viz., $50,000 and $47,000, with the understanding that these sums could not be drawn upon prior to the 1st day of December, 1915, and that the corporation would pay interest thereon at the rate of 6 per cent. The minutes of the directors' meeting dated March 1, 1911, provided for the issuance of the following certificate:

This is to certify that Albert A. Cohn has deposited with The Cohn, Goodman Company of Cleveland, O. the sum of $50,000.00, which has been placed upon the books of the said Company to the credit of the said Albert A. Cohn, with the understanding that the Company shall have the use of said money until the first day of December, 1915, upon payment to the said Albert A. Cohn of interest at the rate of six per cent per annum, payable monthly, and computed from the first day of March, 1911.

A similar certificate was issued to Louis Goodman covering the amount left with the company by him.

No formal action was taken by the directors declaring a dividend, but it was the practice at the end of each year to credit to the personal account of the stockholders the amount of the profits to which

each was entitled. In the early days of the corporation and before the taxable years in question the two stockholders, Albert A. Cohn and Louis Goodman, each received 37½ per cent of the profits although their combined stock ownership was only about 50 per cent of the outstanding issue. The stockholders were credited with the respective amounts of the profits at the direction of Cohn and without any formal action on the part of the directors that this course be followed. The amounts placed to the credit of the respective stockholders but not withdrawn by them were never reported as income in their personal returns.

On January 14, 1918, an agreement was entered into by the petitioner on the one hand and Albert A. Cohn, Louis Goodman, and A. R. Cohn on the other hand. This agreement recited that at that time the stock was owned in the following proportion:

|  |  |
|---|---|
| Albert A. Cohn | 255 shares |
| Louis Goodman | 125 shares |
| A. R. Cohn | 120 shares |

It was agreed, however, that the profits should be distributed in the following proportions:

|  |  |
|---|---|
| Albert A. Cohn | Four-eighths |
| Louis Goodman | Three-eighths |
| A. R. Cohn | One-eighth |

The agreement contains the following material statements:

Whereas, the following amounts are credited to said stockholders on the books of the Company as of the 30th day of November, 1917, which amounts, but for the execution of this agreement, would be subject to the unrestricted control and right to withdrawal on the part of said stockholders, namely:

| | |
|---|---|
| To the credit of the said Albert A. Cohn on the books of the Company, the sum of | $72,282.30 |
| To the credit of the said Louis Goodman on the books of the company, the sum of | 61,086.71 |
| To the credit of the said A. R. Cohn, on the books of the company, the sum of | 2,195.58 |

and

Whereas, said parties desire for their mutual protection, and to promote the financial stability of the Company, to restrict the right of the stockholders to withdraw the said amounts to their credit, as hereinafter provided.

Said parties do therefore mutually covenant and agree to and with each other, as follows, to wit:

(1) The said amounts to the credit of the stockholders, as aforesaid, shall be hereafter designated on the books of the Company as a Special Surplus Account; the aggregate amount of said Special Surplus Account, to wit, the sum of $135,564.52 shall nevertheless continue to be owned by the stockholders, as follows:

|  |  |
|---|---|
| By the said Albert A. Cohn | $72,282.30 |
| By the said Louis Goodman | 61,086.71 |
| By the said A. R. Cohn | 2,195.58 |

(2) All net profits earned by the Company after the 30th day of November, 1917, shall be divided or apportioned among said stockholders, as follows:

To the said Albert A. Cohn 4/8ths thereof;
To the said Louis Goodman 3/8ths thereof;
To the said A. R. Cohn 1/8th thereof;

and such portion of said net earnings which is not distributed to said stockholders in cash, in the above proportions, shall be credited to the stockholders in the above proportions under said Special Surplus Account, and this agreement shall operate and be tantamount from time to time to declarations of dividends or other distribution on the part of said Company, or the directors thereof, for the purposes herein expressed, of all net profits earned by said Company after November 30, 1917.

The agreement further provides that upon the death of any stockholder the proper legal representatives of such deceased stockholder shall have the right to withdraw the amount " owing to such deceased stockholder at the time of his death, in said Special Surplus Account, in five equal annual installments, the first to be withdrawn six months after the death of such deceased stockholder, and the remaining at annual intervals thereafter, and the deferred payments to which such stockholder's estate shall so be entitled shall bear interest at the rate of eight per cent per annum." The agreement further provides that it should go into effect as of the 30th day of November, 1917, and be valid and binding upon the parties for a period of 10 years thereafter.

On the same date there was an agreement entered into by Albert A. Cohn and Louis Goodman which gave to Cohn the right to purchase Goodman's interest in the corporation should the latter desire to sell the same and provided in detail the method of determining the value of Goodman's shares of stock in the corporation. The agreement between the parties also contained the following provision:

(2) The said Albert A. Cohn shall pay to the said Louis Goodman the aggregate sum of the book value of the said stock of the said Louis Goodman determined as aforesaid, together with the amount to the credit of the said Louis Goodman under said Special Surplus Account, as of the date of the inventory as of which said book value is determined as follows:    *    *    *

(3) Upon the payment of said sums to the said Trust Company by the said Albert A. Cohn for the said Louis Goodman, the said Albert A. Cohn shall become fully and legally possessed of and entitled to the said shares of the capital stock of the Company theretofore owned by the said Louis Goodman, together with the entire right, title and interest of the said Louis Goodman in and to said Special Surplus Account.

On May 31, 1920, a meeting of the directors of the petitioner was held, at which it was voted to reorganize the corporation, and the following resolution, among others, was adopted:

Resolved, further, that the present surplus and undivided profits of the company be and the same are hereby ordered transferred from the Surplus, or Undivided Profits Account, to Capital Account, to the extent of $271,787.64 thereof, and that stock of the company, as re-organized, be issued to the present stockholders or their assigns in such manner and in such proportions as they

as stockholders, may be entitled thereto, subject to the further action of the Board of Directors subsequent to the authorization of the proposed re-organization of the company; said new stock so issued to be issued as fully paid and non-assessable, and to be deemed as having been so fully paid by reason of the transfer of the aforesaid sum from surplus and undivided profit account to the Capital Account of the company.

On the same date a stockholders' meeting was held at which a reorganization was agreed upon, the certificate of reorganization containing the following pertinent provisions:

6. The capital stock of said Corporation, Common and Preferred, shall be Three Hundred Fifty-two Thousand Five Hundred Dollars ($352,500.00), consisting of three thousand shares of Preferred stock of the par value of $100 per share, and fifteen hundred shares of common stock without nominal par value.

7. The amount of common capital with which the Corporation will carry on business is Fifty-two Thousand Five Hundred Dollars ($52,500.00) consisting of fifteen hundred shares of said Common stock without nominal or par value, and being a sum equivalent to Thirty-five Dollars ($35.00) for each share of Common stock to be issued.

8. The terms upon which the new shares of stock of said Corporation shall be issued, in place of outstanding shares of stock, are as follows, to wit: The new shares of the stock of said corporation as re-organized shall be issued to the holders of the present capital stock of the company, or their assigns, in exchange for the surrender and cancellation of all of the present outstanding shares of stock in the following proportions, to wit: for each twenty (20) shares of stock now issued and outstanding there shall be issued one hundred thirteen (113) shares of the new preferred stock, and for each one (1) share now issued and outstanding there shall be issued three (3) shares of the common stock of the reorganized company; said allotment being based upon the exchange of one share of the new preferred stock for each share of the old common stock, and the balance being a distribution of a stock dividend this day authorized and declared by the Board of Directors of the Company.

The directors who were elected at the stockholders' meeting held a special meeting on the same day at which resolutions were adopted ratifying the action of the former directors and setting forth the terms upon which the new stock of the reorganized company was to be issued.

A stockholders' agreement relating to the reorganization was entered into setting forth the allotment of stock to be made to each stockholder and providing in part as follows:

And we do further agree that there shall remain in the Treasury of the company, unissued for the present, one hundred seventy-five (175) shares of the preferred stock of the re-organized company.

Second: For the purposes of this agreement, at the time of the execution hereof, the respective interests of the parties hereto in and to the capital, surplus, or other claim against the said company, is as follows, to wit:

A. A. Cohn_____ Surplus, $115,004.10; stock, $25,500.00; total, $140,504.10.

Louis Goodman_____ Surplus, $87,502.43; stock, $12,500.00; total, $100,002.43.

Nathan Rosenberg_____ Surplus, $11,455.32; withdrawn, $1,455.32; balance, $10,000.00.
W. E. Clarke_____ Due from Company and not withdrawn, $3,485.12.
J. H. Lichtig_____ Due from Company and not withdrawn, $2,159.42.
C. P. Jacobs_____ Due from Company and not withdrawn, $1,136.57.
A. R. Cohn_____ Stock, $12,000.00.

It is understood that in addition to the interest of the respective parties aforesaid, the net earnings of the company down to and including the 30th day of April, 1920, shall be transferred to Surplus Account and from Surplus Account to Capital Account and credited to the new stockholders in proportions corresponding with the proportions in which the new common stock shall be issued to them, as hereinabove set forth.

THIRD: Any deficiency between the amount due from such new stockholders upon the stock allotted to them as aforesaid, after crediting their present holdings, together with their respective interests in surplus and earnings as aforesaid, shall be paid either in cash or note, at the option of the subscriber, and for the purposes of this agreement the adjustment as between the company and the stockholders shall be as follows:

Upon issuance of stock as aforesaid and surrender and cancellation of his old shares, the company shall pay to A. A. Cohn the sum of Four Dollars Ten Cents_____ $4. 10
Upon issuance of stock as aforesaid and surrender and cancellation of his old shares, the company shall pay to Louis Goodman the sum of Two Dollars Forty-three Cents_____ 2. 43

Shares as aforesaid, upon surrender of their old shares, together with any interest or claim in surplus or earnings to date, shall be issued to Nathan Rosenberg and A. R. Cohn without adjustment either way.

Shares as aforesaid shall be issued to W. E. Clarke, and the company shall receive from the said W. E. Clarke either cash or in lieu thereof his promissory note for the difference between $10,000.00 and $3,485.12, secured by a deposit of his preferred and common stock as collateral to such note, such note to bear interest at seven per cent. and to be payable November 30, 1920.

Shares as aforesaid shall be issued to J. H. Lichtig, and the company shall receive from the said J. E. Lichtig, either cash or in lieu thereof his promissory note for the difference between $5,000.00 and $2,159.42, secured by a deposit of his preferred and common stock as collateral to such note, such note to bear interest at seven per cent. and to be payable November 30, 1920.

Shares as aforesaid shall be issued to C. P. Jacobs, and the company shall receive from the said C. P. Jacobs either in cash or in lieu thereof his promissory note for the difference between $5,000.00 and $1,136.57, secured by a deposit of his preferred and common stock as collateral to such note, such note to bear interest at seven per cent. and to be payable November 30, 1920.

Stock certificates, representing the increased stock, were issued on May 31, 1920.

On June 9, 1920, a certificate of reorganization was filed with the Secretary of State of the State of Ohio.

It was the uniform practice of the corporation in all credit statements made by it to Dun and Bradstreet and also to the various banks to treat the special surplus account as a part of the capital and surplus of the corporation and based on these credit statements

large sums were borrowed by the corporation which at times equaled almost half a million dollars.

Under date of January 30, 1924, the then Deputy Commissioner Bright advised petitioner of the intention of the Commissioner to make an immediate assessment of the additional tax asserted for the fiscal years ended November 30, 1917, and November 30, 1918, inasmuch as the statute of limitations was about to run, and in said letter stated that the Bureau would entertain a claim in abatement if filed within ten days of receipt of notice and demand from the collector. An assessment was made and thereafter abatement claims were filed and the letter of July 21, 1925, which served as a basis of the taxpayer's appeal in this case contained the Commissioner's action on the abatement claim.

OPINION.

ARUNDELL: At the hearing of this case the respondent moved that the appeal be dismissed in so far as it relates to the years 1917 and 1918, as overassessments have been found for those years and the Board is therefore without jurisdiction. The amounts of the original assessments for the years 1917 and 1918 were $2,535.40 and $15,220.11, respectively. The Commissioner subsequently assessed additional taxes for those years in the respective amounts of $6,046.22 and $6,138.38. Of these amounts the notice appealed from sets forth $1,551.38 for 1917 and $2,567.92 for 1918 as overassessments. There is then, for each year an amount in excess of the amount reported by the petitioner which was assessed prior to June 3, 1924, concerning which the Commissioner made a final determination prior to the enactment of the 1926 Act, and an appeal from such determination was pending before the Board when that Act was enacted. The case therefore comes within the provisions of section 283(f) of the Revenue Act of 1926 and we have jurisdiction over the appeal for the years 1917 and 1918. *Appeal of Covert Gear Co.*, 4 B. T. A. 1025; *Appeal of William A. Slater Mills, Inc.*, 5 B. T. A. 971. The respondent's motion to dismiss is denied.

In considering the merits of the case it may be divided conveniently into three periods: First, the fiscal year ended November 30, 1917; second, the period December 1, 1917, to May 30, 1920; third, the period May 31, to November 31, 1920.

*First period.* By the directors' resolution of March 1, 1911, the amounts of $50,000 and $47,000 then standing on the petitioner's books to the credit of Cohn and Goodman, respectively, were recognized as borrowed funds and clearly those amounts can not be included in invested capital for the period here under consideration.

While thereafter in this period there was no formal corporate action taken to convert the earnings into dividends, the earnings were credited to the accounts of the individual stockholders and were considered by the officers of the petitioner as belonging to the stockholders as is evidenced by the agreement of January 14, 1918, set forth in the findings of fact.

*Second period.* By the resolution of January 14, 1918, the amounts standing to the credit of the stockholders as of November 30, 1917, were recognized as obligations of the petitioner. Such amounts, therefore, can not be included in invested capital. *Appeal of Kelly-Buckley Co.*, 1 B. T. A. 1154; *Appeal of O'Neil Construction Co.*, 4 B. T. A. 401. That certain restrictions were placed on the stockholders' right of withdrawal does not change the character of the amounts involved. Most loans carry certain restrictions, such as to the time of payment. The same situation exists as to the amounts credited to the special surplus account during the balance of this period. Under the resolution of January 14, 1918, it was not necessary that formal declarations of dividends be made in order to make a distribution of surplus as it was agreed that entering a portion of the profits in the special surplus account should "operate and be tantamount from time to time to declaration of dividends or other distribution on the part of said Company." The amounts involved being separated from the petitioner's earnings and recognized by it as obligations to its stockholders, we are of the opinion that they constituted borrowed capital and can not be included in invested capital. See *Appeal of Wm. H. Davidow Sons Co.*, 1 B. T. A. 1215; *Appeal of Webb Press Co., Ltd.*, 3 B. T. A. 247; *Appeal of William Greilich & Sons, Inc.*, 3 B. T. A. 1333; *Lobsitz Hardware Co.* v. *Commissioner*, 5 B. T. A. 295.

The petitioner cites *Eaton* v. *English & Mersick Co.*, 7 Fed. (2d) 54, and *Davidson & Case Lumber Co.* v. *Motter*, 14 Fed. (2d) 137, in support of its contentions. These cases are readily distinguishable from this one. In the *English & Mersick* case the court found that the resolutions set forth did not constitute the declaration of dividends and did not create an indebtedness of the corporation. In the *Davidson* case it was found that there had been no declaration of a dividend and that the amount involved at all times belonged to the corporation.

In the present case the resolution relating to the amounts entered in he special surplus account clearly shows that both the petitioner and its stockholders recognized the entering of the credits as the declaration of dividends and the amounts appearing therein as the property of the stockholders.

*Third period.* On May 31, 1920, the petitioner, by its stockholders and directors, took appropriate action to increase its capital stock

from $50,000 represented by 500 shares of common stock, to $352,-500 represented by 3,000 shares of preferred at a par value of $100 each and 1,500 shares of common without par value but valued by the petitioner at $35 per share. Of the new stock 2,825 shares of preferred and all of the common, 1,500 shares, were issued, the petitioner receiving therefor, in part, the surplus standing to the credit of its stockholders, and for the balance, notes of the stockholders with the stock as collateral security, as shown by the findings of fact. The evidence shows that the petitioner deemed the new stock to be fully paid and the respondent does not deny nor does the record show that the items paid in, namely the surplus account and notes of stockholders, were not equal in value to the par value of the preferred stock and the value of $35 per share ascribed to the common. For the period beginning May 31, 1920, the petitioner is therefore entitled to have included in its invested capital the amount of $285,000 by which its capital stock was increased at that date. *Pictorial Review Co.,* 5 B. T. A. 416.

*Judgment will be entered on 15 days' notice, under Rule 50.*